IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MAISHA IMANI HAMILTON,                    ) | | |
|     Plaintiff,                            ) | | |
|                                           ) | | |
|     v.                                    ) | 11 C 3416 | |
|                                           ) | | |
| VILLAGE OF OAK LAWN, POLICE               ) | | |
| OFFICERS R. FINNELLY, T. SHANAHAN,) | | |
| J. VASQUEZ, and T.  HUTTNER,ALICE    ) | | |
| DALE, and DONALD LORINCZ,                 ) | | |
|     Defendants.                           ) | | |

## MEMORANDUM AND ORDER

Dr. Allan Lorincz lives in Oak Lawn, Illinois.  Plaintiff Maisha Imani Hamilton, who is currently represented by appointed counsel, contends that on May 20, 2010, she arrived at Dr. Lorincz's home "to assist him due to his Parkinson's disease."  According to Ms. Hamilton, Dr. Lorincz agreed to pay her $10,000 to compensate her for her services.  Alice Dale and Donald Lorincz are two of Dr. Lorincz's children.  Upon learning of the financial arrangement between Ms. Hamilton and Dr. Lorincz, Ms. Dale called the Oak Lawn police and asserted that Ms. Hamilton was taking advantage of her father.  Donald Lorincz later joined the fray by arriving at Dr. Lorincz's home on May 30, 2012.  It is unclear whether the police arrived at the home on both May 20th and May 30th, but on at least May 20th, they came to Dr. Lorincz's house to investigate the allegations of criminal exploitation of the elderly, told Ms. Hamilton to stay while they investigated, and approximately two hours later, directed Ms. Hamilton to leave.

This § 1983 action against the Village of Oak Lawn, all of the police officers involved in the incident, Alice Dale, and Donald Lorincz followed.  Ms. Dale filed an answer but the Oak Lawn defendants (the Village and the officers) and Mr. Lorincz filed motions to dismiss, which are presently before the court.  For the following reasons, the federal claims against the Village

of Oak Lawn defendants are dismissed, the lack of an actionable federal claim against the officers dooms the conspiracy claims against Alice Dale and Donald Lorincz, and the court declines to exercise supplemental jurisdiction over the state law claim for tortious interference with contract.

**I.      Background**

As noted above, this case flows from a dispute between Dr. Lorincz and his family about the propriety of paying Ms. Hamilton $10,000 for healthcare services. The second amended complaint, filed by counsel, contains five counts: (1) a § 1983 claim against the police officers based on their "unlawful detention" of Ms. Hamilton at Dr. Lorincz's house, their allegedly unlawful actions which prevented her from contracting with Dr. Lorincz, and their command that Ms. Hamilton had to leave the house (Count I); (2) a false imprisonment claim against the officers based on the alleged "wrongful confinement and unreasonable seizure of [Ms. Hamilton's] person for more than two (2) hours" at Dr. Lorincz's home (Count II); (3) conspiracy to violate § 1983 against Ms. Dale and Mr. Lorincz based on their conversations with the defendant officers regarding their belief that Ms. Hamilton was taking advantage of Dr. Lorincz (Counts III and IV); and (4) tortious interference with contract against all of the defendants based on the actions they took to thwart Dr. Lorincz's desire to pay $10,000 to Ms. Hamilton (Count V).

**II.     Discussion**

    **A.      Standard for a Rule 12(b)(6) Motion to Dismiss**

To survive a motion to dismiss, a complaint's request for relief must be "'plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009), *quoting Bell Atlantic v. Twombly*, 550

U.S. 544, 570 (2007). A complaint meets this standard when the alleged facts "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "[N]aked assertions devoid of further factual enhancement" are insufficient. *Id*. at 1949 (internal quotation marks omitted).

### B. The Officers' Motion to Dismiss

Counts I and II are based on the Fourth Amendment and are directed at the defendant officers. The Fourth Amendment of the Constitution of the United States protects individuals against unreasonable searches and seizures. "A seizure of the person within the meaning of the Fourth and Fourteenth Amendments occurs when, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *Kaupp v. Texas*, 538 U.S. 626, 630 (2003) (internal quotations omitted). The defendants assert that Ms. Hamilton's allegations that she was ordered to remain in the home for two hours do not show that she was detained in a way that amounts to a seizure under the Fourth Amendment. The court cannot resolve this issue at this point in the proceedings given Ms. Hamilton's allegation that she was specifically told she could not leave the house. It thus turns to the defendants' alternative arguments about the two alleged seizures: the command to "sit down and not leave" and the subsequent command, about two hours later, to leave.

#### 1. The Command to "Sit down and Not Leave"

According to the Oak Lawn defendants, Ms. Hamilton's Fourth Amendment claim fails as a matter of law as probable cause allowed them to detain Ms. Hamilton for approximately two hours while the police investigated the charge of criminal exploitation of the elderly. The

defendants contend that their order to Ms. Hamilton to "sit down and not leave" while they questioned Dr. Lorincz and his relatives is an investigatory detention that must be evaluated under *Terry v. Ohio*, 392 U.S. 1 (1968). Because the officers detained Ms. Hamilton and then allowed her to leave after questioning others regarding the $10,000 charge, the court agrees that *Terry* provides the proper framework for evaluating Ms. Hamilton's Fourth Amendment claim.

Under *Terry*, an officer may conduct "a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000), *citing Terry*, 392 U.S. at 30. "The determination of whether the officer had reasonable suspicion is an objective inquiry based on the totality of the circumstances known to the officer at the time of the encounter." *United States v. Hicks*, 531 F.3d 555, 558 (7th Cir. 2008). Moreover, "[i]n this circuit the allocation of the burden of persuasion in a § 1983 case claiming a Fourth Amendment violation is clear: a plaintiff claiming that [s]he was arrested without probable cause carries the burden of establishing the absence of probable cause." *McBride v. Grice*, 576 F.3d 703, 706 (7th Cir. 2009).

Here, the police received a call from Dr. Lorincz's daughter alleging that Ms. Hamilton was trying to take advantage of Dr. Lorincz by charging him $10,000 – a very significant amount of money – for healthcare services. "[I]nformants' tips doubtless come in many shapes and sizes from many different types of persons." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). Thus, tips "vary greatly in their value and reliability" so "[o]ne simple rule will not cover every situation." *Id.*, *quoting Adams v. Williams*, 407 U.S. 143, 147 (1972). The court must thus consider the totality of the circumstances, which is based on an informant's reliability and the basis of her knowledge. *Id.* at 233. "[A] deficiency in one may be compensated for, in determining the

overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." *Id*.

The parties agree that Ms. Dale (and later, her brother Donald Lorincz) voiced concerns to the Oak Lawn police about the agreement to pay $10,000. Ms. Hamilton contends that "[w]hatever probable cause may have existed to allow the Oak Lawn Defendants to enter Dr. Lorincz's home was extinguished once he made his statements to them." Plaintiff's Response at 8 (Dkt. 91 at Page ID#834). The court disagrees. With all due respect to Dr. Lorincz, his confirmation that he indeed wanted to give $10,000 to Ms. Hamilton would not have ineluctably caused a reasonable officer who was aware of the information provided by Ms. Dale to immediately side with Ms. Hamilton since Dr. Lorincz was the alleged victim of Ms. Hamilton's purported plot to take advantage of Dr. Lorincz due to his age and frail health.

"When an encounter shifts from consensual dialogue to an investigatory stop, the officer must be able to point to specific facts that give rise to a reasonable suspicion that the person stopped is involved in criminal activity." *Jones v. Clark*, 630 F.3d 677, 682-83 (7th Cir. 2011), *citing Terry*, 392 U.S. at 30. The officers here have pointed to evidence that is outlined in Ms. Hamilton's complaint and is undisputed: Dr. Lorincz was vulnerable due to his age and medical condition, he had agreed to pay Ms. Hamilton $10,000, and his children articulated their belief to the police that the agreement between Ms. Hamilton and their father rose to the level of criminal exploitation of the elderly. Given these specific factual circumstances, the court finds, as a matter of law, that the allegations in the complaint show that probable cause supported the decision to have Ms. Hamilton stay at the home while the police investigated what can only be characterized as a credible tip about possible criminal activity. The Fourth Amendment claims

in Counts I and II based on Ms. Hamilton's two-hour stay at Dr. Lorincz's house, therefore, are dismissed for failure to state a claim.

### 2. The Command to Leave the Premises

The Oak Lawn defendants contend that the command to leave Dr. Lorincz's home cannot state a claim under the Fourth Amendment because a person who is told to leave, by definition, cannot be seized since she is free to go. Ms. Hamilton does not address this argument. Accordingly, to the extent that she is attempting to assert in Counts I or II that the command to leave violates the Fourth Amendment, she has not stated a claim for which relief may be granted. Based on the court's dismissal of the Fourth Amendment claims against the officers, the court will not reach the parties' alternative arguments regarding those claims.

### B. Donald Lorincz's Motion to Dismiss

The court next turns to Ms. Hamilton's claim that Alice Dale and Donald Lorincz conspired to violate § 1983 based on their conversations with the defendant officers regarding their belief that Ms. Hamilton was taking advantage of Dr. Lorincz (Counts III and IV, respectively. Ms. Dale filed an answer and Donald Lorincz filed a motion to dismiss the § 1983 conspiracy claim. To the extent that Ms. Dale and Mr. Lorincz are similarly situated, the court's conclusions about § 1983 conspiracy apply equally to both defendants.

Mr. Lorincz argues that the officers' conduct did not violate the Fourth Amendment and that the lack of an underlying constitutional violation means he cannot have conspired to violate Ms. Hamilton's constitutional rights. The court agrees that the dismissal of the Fourth Amendment claims means that the conspiracy claims against both Mr. Lorincz and Ms. Dale fail as a matter of law. *See Sow v. Fortville Police Dep't*, 636 F.3d 293, 305 (7th Cir. 2011) ("The

district court also correctly determined that the absence of any underlying violation of Plaintiff's rights precludes the possibility of Plaintiff succeeding on a conspiracy claim). Accordingly, Counts III and IV are dismissed for failure to state a claim.

### C. Tortious Interference With Contract

In the final count of the complaint (Count V), Ms. Hamilton asserts that all of the defendants are liable for tortious interference with contract based on the actions they took to thwart Dr. Lorincz's desire to pay $10,000 to her. If the court eliminates a plaintiff's federal claims, it may exercise its discretion and dismiss a supplemental state law claim without prejudice. *See* 28 U.S.C. § 1367(c)(3); *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir.1999) ("we pause to emphasize that it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial"). This is not an absolute rule. *Groce v. Eli Lilly & Co.*, 193 F.3d at 501. Nevertheless, given the prompt dismissal of the § 1983 claims, the court, in an exercise of its discretion, declines to exercise supplemental jurisdiction over Ms. Hamilton's state law claim of tortious interference with contract. This claim is, therefore, dismissed without prejudice to Ms. Hamilton's ability to pursue this claim in state court. The court further notes that its decision to refrain from exercising supplemental jurisdiction does not reflect any views regarding the merits of the state law claim.

### III. Conclusion

For the reasons discussed above, the federal claims against the Village of Oak Lawn defendants are dismissed for failure to state a claim under the Fourth Amendment and the lack of an actionable federal claim against the officers dooms the conspiracy claims against Alice Dale and Donald Lorincz. In addition, the court declines to exercise jurisdiction over Ms. Hamilton's state law claim for tortious interference with contract. The motions to dismiss filed by the Oak Lawn defendants [Dkt. 69] and Donald Lorincz [Dkt. 88] are, therefore, granted. The complaint, which was drafted by counsel, sketches out the events underlying this case in sufficient detail that it appears that granting leave to amend would be inappropriate. Accordingly, the constitutional claims are dismissed with prejudice. This means that this case is over, as the court has declined to exercise supplemental jurisdiction over the state law claim. The clerk shall, therefore, strike all pending dates, enter a Rule 58 judgment, and terminate this case from the court's docket.

The court also extends its sincere thanks to appointed counsel for Ms. Hamilton, attorney Mark Kestnbaum. The docket reflects that Mr. Kestnbaum was associated with Tenney & Bentley, LLC when he was appointed, and is currently counsel for Omicron Technologies, Inc. The court appreciates his zealous representation of Ms. Hamilton and his commitment to pro bono representation.

DATE: July 25, 2012

_____
Blanche M. Manning
United States District Judge